## Moon *v.* Pittsburgh Plate Glass Company.

[No. 2,975. Filed January 30, 1900.]

CONTRACTS.—*Gas Lease.—Rent.—Abandonment of Well.*—A natural gas lease signed January 23, 1891, provided that it should commence to run from the date of the signing, and should terminate whenever natural gas ceased to be used generally, the lessee to pay an annual rental of $18, to be paid on the first day of September of each year, and as an additional consideration, an "annual rental of $100, each year, for each gas well drilled, as aforesaid, which produces gas in paying quantities sufficient for manufacturing purposes, said payments to commence and become due and payable on the first day of September, as to each of said gas wells, after the completion thereof, and to continue thereafter annually during the continuance of this contract." A well was drilled November 1, 1893, and the annual rent for the first two years was paid, but the well was abandoned as unprofitable September 1, 1896. *Held*, that the lessor was entitled to the ratable portion of the annual rent from November 1, 1895, until the abandonment thereof September 1, 1896, but that he could not recover rent after such abandonment. Henley, J., dissenting.

From the Howard Superior Court. *Reversed.*

*B. C. Moon*, for appellant.

*J. C. Blacklidge, C. C. Shirley* and *C. Wolf*, for appellee.

BLACK, J.—The appellant sued the appellee upon a written instrument called a "gas lease", which was made by the appellant and others, parties of the first part, whose interests had since been acquired by the appellant, to the Diamond Plate Glass Company, party of the second part, the assignor of the appellee, by the terms of which the parties of the first part "granted and contracted to the second party, their

heirs and assigns, one tract of land, twenty feet square, of" a certain parcel of thirty-six acres,—said tract of twenty feet square to be located by mutual agreement,—"for the purpose and with the exclusive right of a gas well on said twenty-foot square tract. Said second party, their heirs or assigns, shall have the right of ingress and egress to and from said twenty-foot square tract of land over said entire tract for the purpose of drilling, utilizing, and operating said gas well, and piping and conducting gas therefrom, including the erection of suitable sheds over said well, and the right to erect and remove any and all machinery or fixtures necessary to the drilling, repairing, and operating said well, and the right to put down water wells, and use sufficient water for said purpose. Said second party, their heirs and assigns, shall also have the right to the use of the highway adjoining any part of said entire premises for the laying of mains and pipes for the transportation of gas or oil. All pipes that are so placed on said premises in reaching said highway shall be of sufficient depth not to interfere with the cultivation of the soil, when it can be done." Provision was made for payment for injury to buildings, fences, etc. The instrument proceeded as follows: "In consideration of said contract and other conditions, said second party agrees to deliver to said first party, during the continuance of this contract, natural gas, free of charge, necessary for domestic use for dwelling-house on said premises; said gas to be delivered in a main or pipe on a public highway nearest to the principal dwelling-house now on said premises, where the same shall be received by the first party; all necessary attachments to be made by the first party. Said second party agrees to furnish the gas as above indicated on or before the 1st day of February, 1891, unless prevented by unavoidable accident or delay. This contract shall be deemed to commence at and run from the date of the signing thereof, and shall be deemed to have terminated whenever natural gas ceases to be used generally for manufacturing purposes, or whenever the second party,

their heirs or assigns, shall fail to pay or tender the rental price herein agreed upon within sixty days of the date of its becoming due. And in the event of the termination hereof for any cause, all rights and liabilities hereunder shall cease and terminate. And as an additional consideration the said second party agrees to pay to said first party an annual rental of $100, each year, for each gas well drilled as aforesaid which produces gas in paying quantities sufficient for manu- facturing purposes; said payments to commence and become due and payable on the 1st day of September, as to each of said gas wells, after the completion thereof, and to continue thereafter annually during the continuance of this contract. Until the drilling of a gas well on said premises by said second party, they shall pay to said first party an annual rental of $18, to be paid on the 1st day of September of each year, at the office of the Diamond Plate Glass Company, Kokomo, Indiana; all taxes on pipe lines or wells to be paid by second parties. Now, as a part of said contract, and as a further consideration thereof, the party of the first part covenant and agree, and hereby bind themselves, their heirs, executors, and assigns, not to drill, or suffer or permit others to drill, or put down, any other gas well or wells on any part of said entire thirty-six acre tract of land above described, during the continuance of said contract. This contract shall extend to and be binding upon the heirs, executors, and assigns of the parties hereto," etc. The date of the signing of the contract was the 23rd of January, 1891.

It was shown in the complaint that the Diamond Plate Glass Company on the 1st of April, 1895, assigned to the appellee said lease, its gas well on said premises, and all mains, pipes, and fixtures thereon; that the Diamond Plate Glass Company, under the contract, laid a large main, eight inches in diameter, along the north side of the highway, across the whole south side of said tract of land, for the transportation of gas, which main it maintained until it so transferred it to the appellee; that said Diamond Plate Glass

Company drilled a gas well on said land about November 1, 1893, under said lease, which well produced gas in paying quantities sufficient for manufacturing purposes from that date until some time in the fall of 1896, and the gas from said well was used for manufacturing purposes from that date until some time in the fall of 1896, and the gas from said well was used for manufacturing purposes by said Diamond Plate Glass Company and the appellee until some time in the fall of 1896; that said gas was piped across said land by both of said companies from said well to said eight-inch main; that on the 1st of April, 1895, the appellee took possession, and since that date had been, and still was, in the possession and use of said land under said lease for all natural gas purposes contemplated by said lease, except that said gas well was abandoned by the appellee some time after September 1, 1896, although the pipe leading from said well to said eight-inch main is still maintained by the appellee, and is still used by it as a blow-off pipe, and said eight-inch main has been continuously, and still is, maintained and used by the appellee across the appellant's said land for the transportation of gas. It is further alleged that natural gas has been used generally for manufacturing purposes ever since the execution of said agreement, and is still so generally used. It is also alleged that said two companies have furnished gas for use in the dwelling-house on said land at all times as required by said lease; that the rental of $18 per year was duly paid by the Diamond Plate Glass Company until said gas well was drilled; that said last named company paid $100 rental maturing under said lease on September 1, 1894, and the appellee paid $100 rental maturing under said lease on September 1, 1895; that the rental of $100 maturing on September 1, 1896, $100 maturing on September 1, 1897, and $100 maturing on September 1, 1898, with interest from the several dates when the same became due, is still due to the appellant, and wholly unpaid; wherefore, etc.

There was an answer in five paragraphs. The appellant presents here the action of the court in overruling her demurrer to each of the third, fourth, and fifth paragraphs of answer. In the third paragraph, pleaded as a defense to the claim for annual well rental, it was alleged, in substance, that on the 1st of September the gas well in question had ceased to produce gas in paying quantities sufficient for manufacturing purposes, and the appellee abandoned it, and that it has not since that date produced, and does not produce, gas in paying quantities sufficient for manufacturing purposes, or for any purpose whatever. In the fourth paragraph, pleaded as a failure of consideration as to the annual well rental, the same facts were pleaded as in the third paragraph, except that the pleading alleged that on the 1st of September, 1896, the well "ceased" to produce, etc., instead of alleging that at that date it "had ceased", etc., and except, also, that in the fourth paragraph it was not alleged, as in the third, that the appellee abandoned the well. In the fifth paragraph the appellee pleaded, as a failure of the consideration for the lease, substantially the same facts as in the third paragraph.

By the terms of the contract, it was to commence at and run from the date of signing (January 23, 1891), and was to be deemed terminated whenever natural gas ceased to be used generally, etc., and it appears from the complaint that it had not yet ceased to be so used. It appears, also, that possession was taken under the contract, and that the appellee still continued in possession. Various rights were contracted for, and various separate considerations were stipulated. The lessee was to commence to furnish gas for domestic purposes from the 1st of February, 1891, and to continue to furnish it during the continuance of the contract. With this provision appellee has complied, and at the commencement of the suit it was still complying therewith. From the date of the contract until the drilling of a gas well, the party of the second part was to pay the party of the first

part an annual rental of $18. This rental was to be paid on the 1st of September of each year. This provision, also, was complied with. The "annual rental of $100, each year" was to be paid for each gas well drilled which produced gas in paying quantities sufficient for manufacturing purposes. It would not be payable for a well which did not so produce gas, or which had ceased so to produce gas. But the periods in which this annual rental would accrue were to commence to run when such a well was drilled, at which time the rental which was to run "until the drilling of a gas well" would cease to accrue. The time of payment of the annual rental, whether of $18 or of $100, was to be the 1st of September; but the rent was to run, not from that date, but in the one case from the time of the signing of the contract, and in the other from the drilling of the gas well. No provision was made for any annual rental after a well had ceased to be profitable, unless, indeed, another profitable well should be drilled; but gas for domestic purposes was still to be delivered during the continuance of the contract. The well was drilled on the 1st of November, 1893, which ceased to be profitable on the 1st of September, 1896, or had ceased on that day, and which was abandoned by the appellee. The annual rent for the year from November 1, 1895, to November 1, 1896, which was due and payable on the 1st of September, 1896, has not been paid. It is to be regarded as rent for the use of land. *Chandler* v. *Pittsburgh Glass Co.*, 20 Ind. App. 165.

We are to determine the proper effect to be given to the language of the contract according to its ordinary meaning. If, adopting a rule like that in cases of eviction of a tenant, we should hold the appellee liable for the entire annual rent of $100, which by the terms of the contract was payable September 1, 1896, basing such decision upon the ground that this annual rent had become due at the time when the well was abandoned because of its ceasing to produce gas in profitable quantity, such rule would operate wholly to release

the lessee in a case where he had abandoned for such reason before the day of payment of the annual rent. There is in the contract, in effect, a stipulation analogous to a provision in a lease for the ceasing or the suspension of rent when the premises may become uninhabitable for a specified cause. To hold the appellee liable for a ratable part of the annual rent accrued at the date at which the well became unprofitable seems to be just to both parties, and in accord with their intent, as expressed by the terms of the contract. We think the appellant is entitled to recover such ratable portion of the annual rent of $100 for the use of the well up to September 1, 1896, but that her claim for rent for subsequent years can not be sustained, inasmuch as at such periods the well was not producing gas as contemplated by the contract, and had been abandoned.

The third, fourth, and fifth paragraphs of answer were directed against the entire claim for gas well rental; therefore they were each insufficient on demurrer. The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

### DISSENTING OPINION.

HENLEY, J.—It is said in the majority opinion in this case that: "To hold the appellee liable for a ratable part of the annual rent accrued at the date at which the well became unprofitable seems to be just to both parties, and in accord with their intent, as expressed by the terms of the contract. We think the appellant is entitled to recover such ratable portion of the annual rent of $100 for the use of the well up to September 1, 1896, but that her claim for rent for subsequent years can not be sustained, inasmuch as at such periods the well was not producing gas as contemplated by the contract, and had been abandoned." If this is a correct statement of the law as applied to the contract sued upon, does it not destroy plaintiff's cause of action, and should not the demurrers directed to the answers have been sus-

tained to the complaint? Appellant was the plaintiff below, and, if the complaint is bad, the judgment ought to be affirmed, because it was not error for the court to overrule appellant's demurrers to the answers of appellee, even if we concede that they were bad. *Grace* v. *Cox*, 16 Ind. App. 150; *McDonald* v. *Geisendorff*, 128 Ind. 153; *Indiana, etc., Ins. Co.* v. *Bogeman*, 4 Ind. App. 237; *Gould* v. *Steyer*, 75 Ind. 50.

Appellant, if she recover at all, must recover upon the theory of her complaint; and her complaint must be construed upon that theory which is most apparent, and is most clearly outlined by the facts stated therein. For a case precisely in point, we cite *Murray* v. *Cazier*, 23 Ind. App. 600. Also, see, *Dull* v. *Cleveland, etc., R. Co.*, 21 Ind. App. 571; *Pittsburgh, etc., R. Co.* v. *Sullivan*, 141 Ind. 83, 27 L. R. A. 840; *Jones* v. *Cullen*, 142 Ind. 335; *Batman* v. *Snoddy*, 132 Ind. 480; *Cleveland, etc., R. Co.* v. *Dugan*, 18 Ind. App. 435. With this rule as a guide, I think but one conclusion can be reached as to the theory of appellant's complaint. The rental contract between appellant and appellee was for a tract of land twenty feet square, for which appellee was to pay as rental the sum of $18 per year; the rental to commence from the date of the execution of the contract. In addition to the $18 per year, the appellee was required, as a part of the consideration, to furnish natural gas for domestic use free of charge to appellant, which gas appellee was required to deliver in a main or pipe on a public highway nearest to the dwelling-house on said premises. The contract was executed January 21, 1891, and appellee agreed to furnish gas to appellant before the 1st day of February, 1891. Appellant's complaint avers as facts that all the things above enumerated were done and performed by appellee. The breach of the rental contract for which appellant seeks to recover is the alleged failure of appellee to perform the obligations imposed upon it by the following part of the contract: "And, as an additional

consideration, the said second party [appellee] agrees to pay to said first party [appellant] an annual rental of $100 each year for each gas well drilled as aforesaid which produces gas in paying quantities sufficient for manufacturing purposes. Said payments to commence and become due and payable on the 1st day of September as to each of said gas wells after the completion thereof, and to continue thereafter annually during the continuance of this contract. Until the drilling of a gas well on said premises by said second party, they shall pay said first party an annual rental of $18, to be paid on the 1st day of September of each year at the office of the Diamond Plate Glass Company, Kokomo, Ind." It is averred in appellant's complaint that the rental of $18 per year was duly paid by the Diamond Plate Glass Company. The Diamond Plate Glass Company was the original second party named in the contract, appellee having whatever rights it has by assignment and transfer from said company. That said rental was paid until said gas well was drilled. "That said Diamond Plate Glass Company paid $100 rental maturing under said lease on September 1, 1894, and the defendant [appellee] paid $100 rental maturing on September 1, 1895. That the rental of $100 maturing on September 1, 1896, $100 maturing on September 1, 1897, and $100 maturing on September 1, 1898, with interest from the several dates when the same became due, is still due to the plaintiff from the defendant, and wholly unpaid. Wherefore plaintiff prays a judgment therefor against the defendant with costs of suit." The complaint, by its averments, shows upon its face that the well drilled upon appellant's lands was by appellee abandoned before the maturing of the annual rentals for which judgment is demanded. The plain theory of the complaint, and the only one to which the pleading admits of or presents, is to hold appellee liable for an annual rental of $100, payable on September 1st of each year, beginning on the 1st day of September after the drilling of a gas well, and

continuing as long as the contract shall exist between the parties; and appellant, in her complaint, demands judgment for the annual rentals and interest which fell due after the abandonment of the well drilled upon the leased premises. Such annual rentals, the majority opinion holds, appellant can not recover. The reasons why she can not so recover are well stated, and are within the plain meaning of the language of the contract, making it useless to discuss them here. If we are correct as to the theory of appellant's complaint, and the complaint is bad, then a bad answer is good enough for a bad complaint. If the complaint is good upon the same theory, then the opinion of this court is wrong, because it is therein stated that the annual well rental of $100 stopped whenever the well ceased producing gas in sufficient quantities for manufacturing purposes.

In order to reverse the decision of the lower court in this cause, it is necessary for this court to hold: (1) That the complaint is good; (2) that the third, fourth, and fifth paragraphs of appellee's answer are bad. These answers are by the court held insufficient because they do not present a defense to appellant's entire claim; in effect, that the rental of $100 per year was chargeable to appellee from the time said well was so drilled up to the 1st day of September following its completion. In support of the position that this holding of the court is erroneous, two reasons can be given: (1) The complaint does not seek to recover any such rental; (2) by the contract sued upon, and under which appellant must recover, if at all, the time at which the rental charge for a gas well was to commence was fixed at September 1st after the completion of a well. In this particular instance it would commence on the 1st of September, 1894, the well having been completed November 1, 1893. What has been said in regard to the theory of appellant's complaint applies with equal force to the first reason advanced. As to the second reason, the words of the contract sued upon are as follows: "Said payments to com-

mence and become due and payable on the first day of September as to each of said gas wells, *after the completion thereof*, and to continue thereafter *annually* during the continuance of this contract."

If A rents of B a dwelling-house at $100 per month, under an agreement by which the payment of rent is not to commence until the 1st day of the month immediately following his taking complete possession of the property, would any court hold that, for the part of the month A occupied the premises prior to the 1st day of the following month when payment was to begin, that B could recover from A a ratable proportion of the stipulated monthly rent? Again, suppose A leases of B a house for a term of years at $50 per month. It is agreed in the lease that whenever B shall put an elevator in the building, A shall pay $75 per month, payment of said additional rental to commence on the first day of the month following the completion of the elevator. The elevator is put in the building and completed on the 15th day of July. Could there be any question as to the amount of rent due from A for the month of July? Another illustration: A leases of B a tract of land twenty feet square, for which he agrees to pay an annual rental of $18. It is provided in the lease that if at any time A shall build a slaughter house on said tract, he shall pay an additional rental of $100 per year; payment of such additional rental to commence on the 1st day of September following the completion of the house. Could such contract be interpreted to mean that A would be chargeable with the increased rent from the date of the completion of the house? I think not. I think the illustrations and the case at bar are precisely alike. What else could the word "commence" in the rental contract mean, if any meaning at all is given it, when preceding the words "and become due and payable"? If the word "commence" is entirely omitted from the contract, it reads, "Said payments to become due and payable on the first day of September," etc. With

the word "commence" omitted, or given no meaning whatever, I can see how the contract could be construed as it is in the principal opinion. The time for the beginning of the rental year would then be the date at which the well was completed, and the time when that year's rent would be due as fixed at the 1st day of September following the completion of the well. But giving the word "commence" its plain, ordinary meaning, what is the proper interpretation of this clause? Said payments (Payments of what? Most certainly of rent.) to commence, to begin, and to be due on a certain day. Not only is the payment of rent to commence then, but the rent is made due at that time. This rental was for the use of certain premises for certain purposes, and if appellee was to commence to pay for such use at a specified time, it cannot be inferred (nothing to the contrary being expressed in the contract) that compensation was to be demanded for such use prior to that time, under the same contract. The annual rental was payable annually in advance. It was undoubtedly the intention of the parties, and it is the plain meaning of the contract, that appellee should have the right to enter upon the premises at any time for the purpose of drilling a gas well. If the gas well, when completed, should furnish gas in quantity sufficient for manufacturing purposes, then, on the 1st day of September following, appellee should commence to pay an annual rent therefor. For the protection of the lessor, the rent is thus made payable in advance, and if the well is abandoned by the lessee the landowner can in no event lose more than the rental value from the date of the completion of the well to the time fixed in his contract when by agreement the payment of rent is to commence. When such charge shall commence is simply a matter of contract between the parties, as it was in this case, where the date from which payment was to commence was fixed at the 1st day of September following the completion of the well. No one

realized this more forcibly than did the learned and able counsel for appellant when he drafted the complaint in this cause, seeking to recover, not rent accrued and due on September 1st immediately following the completion of the well on appellant's land, but the *annual rentals* due on the 1st day of September of each year so long as the rental contract remained in full force and appellee held the possession of the premises under such contract. I am convinced that the conclusion reached by the majority in this cause is wrong, and that the judgment of the lower court ought to be affirmed.