## ROBERTS v. FT. WAYNE GAS COMPANY ET AL.

[No. 5,914. Filed November 20, 1907.]

1., APPEAL.—*Briefs.—Rules. — Compliance. — Good-Faith Effort.*— Where appellant makes a good-faith effort to comply with the Appellate Court rules in preparing his brief, defects will be disregarded. p. 531.

2. SAME.—*Briefs.—Omissions.—Supply by Adverse Party.*—Where

appellant fails to set out the necessary parts of the record in his brief, but the adverse party supplies same, the questions presented will be considered. p. 532.

3. CONTRACTS.—*Gas and Oil.*—*Rentals.*—*Failure of Gas Wells.*— Where a gas and oil lease provides that if gas is found on the leased premises in sufficient quantities to market same, the consideration for the lease shall be an annual payment of $100 for each well producing in marketable quantities, and the required four wells were sunk, all of which were paying wells when sunk, such rental terminates when such wells cease to yield gas in marketable quantities. p. 532.

4. SAME.—*Construction.*—*Inserting Terms.*—It is not permissible for the courts, in the construction of a written contract, to insert new terms therein. p. 535.

5. PLEADING.—*Complaint.*—*Oil and Gas Leases.*—*Contracts.*—A complaint for rentals under a gas and oil lease conditioned upon the continuance of the production of gas in marketable quantities must allege that such flow continued in such quantities for the period for which such rentals are claimed, or it will be insufficient on demurrer. p. 535.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Joseph A. Roberts against the Ft. Wayne Gas Company and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Charles T. Parker,* for appellant.
*L. B. Simmons,* for appellee.

WATSON, P. J.—Appellant, plaintiff below, sought to recover certain rentals claimed under a certain lease entered into between appellant and appellee gas company, and assigned by said gas company to appellee Robert Sutton, excepting and reserving to itself "four ten-acre tracts to be located by it in a square form." To appellant's amended complaint, in one paragraph, appellees demurred separately. Judgment was rendered sustaining the demurrers, from which this appeal was taken. The complaint, as amended, alleges that the Ft. Wayne Gas Company is a corporation, organized and doing business under the laws of Indiana; that on June 19, 1902, appellant leased to ap-

pellee gas company certain described real estate in Fairmount township, Grant county, Indiana, particularly describing the same, and approximating the number of acres included therein, "for the purpose of ·drilling and operating for natural gas and petroleum oil;" that said lease was for a term of ten years from date. The agreement is inserted in .the complaint. It sets out the parties to the contract, ·and specifies that said lease is for "all· that certain tract of land situated in Fairmount township, Grant county, Indiana,"—bounding and describing the same. Then follow the provisions that appellees, their heirs and assigns, are to hold the premises "for said purpose only" for a term of ten years from date, "and for so much longer at the election of the lessee as the rental herein agreed upon shall be paid as herein provided for, and as much longer as oil or gas is found in paying quantities.". The rentals were to be one-sixth of the oil, and if "gas is found in sufficient quantities to market the same the consideration in full to the party of the first part shall be $100 per annum in advance for each and every gas-well drilled on the above-described land."

It is further provided that "operation on the above-described premises shall be commenced and four wells completed within four months from the date hereof, or all paid for after October 1, 1902."

"It is also agreed between the parties hereto that, in case said lessee shall fail to do and perform the work hereinbefore mentioned, or to pay the rent as herein agreed, such failure shall not forfeit its right to hold said leased premises for the above term; but, in lieu thereof and in full payment for all damages resulting to the lessor by reason of such default, said lessee is to pay an annual rental for said premises, during the term herein specified, of $100 for each well above specified, the rent to become due semiannually in advance, upon January 1 and July 1, and to be paid within ten days from the maturity thereof at the Citizens Exchange

Bank, Fairmount, Indiana, or this lease be null and void.'' The instrument then sets out that said lessee, by giving a ten days' written notice, and paying the rent due at the. expiration of the ten days, and $5 additional in full of all damages and rents due said lessor from said lessee, may terminate said contract. Provisions are made against drilling wells within three hundred feet of house, barn, or orchard, and for the use of gas by said lessor for domestic purposes. The instrument concludes with the agreement· that all the conditions of the contract shall extend to their heirs, executors, successors, and assigns. It is then averred that defendants agreed to pay plaintiff $100 per annum in advance for every gas-well drilled on said premises; that they would drill at least four wells thereon within four months from date, and, if not, all were to be paid for after October 1, 1902; that they were to be paid for the term of ten years, semiannually, in advance, on January 1 and July 1, providing said lease should not be reconveyed and surrendered to lessor; that defendants took. possession of the premises under said grant, drilled four gas-wells before October 1, 1902, in which gas was found in sufficient quantity to market the same, which gas was found in said wells and transported and marketed by defendants; that one oil-well was drilled on said premises; that defendants have never surrendered, canceled, reconveyed, or released of record said lease, but still hold possession of the premises thereunder; that said rental has been demanded, is past due and unpaid; that defendants have failed to pay the instalments of well rental due July 1, 1904, and January 1, 1905; that there is due $400 in rentals, and a total of $450.

Appellees insist that the appeal should be dismissed for the reason that appellant's brief does not comply with clause five, of rule twenty-two, of the rules of this court. It is pointed out that there is a specific, incorrect statement of the record, in that the description of the land, as set out in appellant's statement .of the record, is

not that given in the lease itself. If a substantial effort is made in good faith to comply with the rules, the court may disregard the defects in the brief. *Stamets* v. *Mitchenor* (1906), 165 Ind. 672; *Hay* v. *Bash* (1906), 37 Ind. App. 167.

2. Where all the matter of record necessary to a full consideration is not set out in appellant's brief the court will consider the question raised if the omitted parts are set out in appellee's brief, since rule twenty-two is satisfied by the joint act of the parties. *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288; *Tipton Light, etc., Co.* v. *Dean* (1904), 164 Ind. 533; *Chicago, etc., R. Co.* v. *Walton* (1905), 165. Ind. 642. For these reasons, we think that the defects in appellant's brief should be disregarded and the questions in issue considered.

3. Appellees insist that the complaint is bad on demurrer because it does not aver "that the wells in question produced or contained any gas at any time during the period for which rental is claimed." In order to determine this question it is necessary to consider more in detail the provisions in the instrument pertaining to the agreed rentals. The lease is for a term of ten years, and so much longer, at the election of the lessees, as the rentals are paid as provided in such lease and "oil or gas is found in paying quantities." The appellees agreed, in consideration of the grant, to give appellant one-sixth of all the petroleum oil discovered on the premises. The terms concerning the operations for gas were as follows: "It is further agreed that, if gas is found in sufficient quantities to market same, the consideration in full to the party of the first part shall be $100 per annum in advance for each and every gas-well drilled on the above-described land." The lessees obligated themselves to begin and complete four wells within four months from date (June 19, 1902), "or all paid for after October 1, 1902." In order to prevent a forfeiture of the contract, the instrument then further provides that failure by the lessees "to do and perform the work hereinbefore

mentioned, or to pay the rent as herein agreed,'' shall not forfeit the right to hold the leased premises for the agreed term, but that lessees shall pay, in full compensation of all damages to lessor, an annual rental for the premises, during the term, of $100 for each well above specified. Appellant contends that the annual payment of $100 for each of the four wells specified was a provision to protect the lessor in the absence of an agreed acreage rental. This seems to be an afterthought. The provision to prevent a forfeiture applies to two conditions. (1) Failure to perform the work mentioned in the agreement; (2) failure to pay the agreed rent. As to the first no question is raised, for it is averred in the complaint and admitted by the demurrer that the four wells were begun and completed within the stipulated period. The only question is whether there has been a breach of the condition to pay the agreed rent whereby appellant's right to the annual payment of $100 for each of the wells specified is perfected. Reference to the paragraph setting out the rentals shows that the rent for gas-wells as agreed upon is $100 per annum for each well ''if gas is found in sufficient quantities to market same.'' The rent for said wells became due on a condition—*i. e.,* finding a marketable quantity— and appellant claims that such an amount having once been found the rental price per well is then binding for the remainder of the term. This agreement was for the sole purpose of operating for oil and gas. The parties did not contemplate, and in fact they provided against, the taking of any other profit from the estate by the lessees. The uncertainty of finding any oil or gas is provided for by making the rent conditional upon the finding of a marketable quantity. It is not consistent with reason to say that the parties did not contemplate paying for wells in which gas was not found in marketable quantity, but that they did intend that wells, once productive, should be paid for after they became nonproductive, when the sole return for the money expended was to be gas. The rent to be paid was in return for a profit

to be taken from the land, that profit being gas. If the profit became exhausted, then the obligation to pay the agreed amount ceased. Thornton, The Law Relating to Gas and Oil, §249, says: "So thoroughly embedded in the law pertaining to the production of oil and gas is the idea that all liabilities and rights must turn upon a productive field or lease, that a failure of a gas or oil well may stop the accruing of periodical rent, even when the express language of the lease makes no reference to a cessure of payment in case the well should become exhausted. Thus, where the lease was to run twenty years, and for each gas well a rent of $500 per annum was to be paid; and before the end of the second year the well, without fault of the operators, was flooded with salt water and ceased to produce gas, it was held that the third year's rent could not be collected, for the reason that there should be read into the lease this implied agreement or understanding that the well to be paid for at the stipulated price was not only to be a gas well but to remain a gas well, and that when it ceased to produce gas it ceased to be a gas well." If this lease or instrument contained a contract to sell all the gas and oil under the leased premises, for a stipulated amount for each well, then appellant's contention would be tenable. But the instrument sued on is a lease to take a profit from the land, and, when the profit becomes exhausted, the liability to pay the consideration therefor is abrogated. *Moon* v. *Pittsburgh Plate Glass Co.* (1900), 24 Ind. App. 34; *Ridgely* v. *Conewago Iron Co.* (1893), 53 Fed. 988; *McConnell* v. *Lawrence Nat. Gas Co.* (1900), 30 Pittsburgh L. J. 346; *McKnight* v. *Manufacturers Nat. Gas Co.* (1892), 146 Pa. St. 185, 23 Atl. 164, 28 Am. St. 790; *Williams* v. *Guffy* (1896), 178 Pa. St. 342, 35 Atl. 875; *Ohio Oil Co.* v. *Lane* (1898), 59 Ohio St. 307, 52 N. E. 791. The provisions in the instrument requiring four wells to be completed within four months was a stipulation for the reasonable development of the premises. Appellees were not bound to drill more than four wells, but the pen-

City of Indianapolis v. L. C. Thompson Mfg. Co.—40 Ind. App. 535.

alty would have attached had they drilled fewer than that number within the agreed time. Likewise, if more than four wells had been drilled, each producing the required amount of gas, appellees would have been liable, under the contract, for the rental sum of $100 per annum for each well so drilled.

Appellee company failed to include an acreage rent in the agreement. This court cannot insert a new term into the contract. That proposition is elementary. It must

4. determine the intent of the parties from the instrument itself. The liability to pay rent for the gas wells was intended to be dependent upon the wells producing and continuing to produce a marketable quantity of gas, and if they did not they ceased to be gas wells.

There is no averment in the amended complaint that any of the wells in question were producing gas at any time during the period for which rental is claimed in this

5. action. Such an averment was necessary to make out appellant's cause of action. The demurrers were properly sustained.

Judgment affirmed.