# CHARLESTON

## PRICHARD V. FREELAND OIL COMPANY.

Submitted November 24, 1914.    Decided December 22, 1914.

1. MINES AND MINERALS—*Oil and Gas Lease—Construction—"Gas Well."*

    The words "gas well", employed in a lease for oil and gas providing that the lessor should be paid "three hundred ($300.00) dollars per year for the gas from each and every *gas well* drilled on said premises; said payment to be made on each well within sixty days after each well is completed, and to be paid yearly thereafter while it is a *gas well*", interpreted in the light of all the facts and circumstances surrounding the parties, their relation to each other, the objects and purposes of entering into the contract, and what they subsequently did under the contract, means a gas well, which considering its location with reference to any market for gas, its capacity as a gas producer, can be profitably operated as such, and not a well producing oil in large quantities and some gas and operated for many years by lessee as an oil well, and without demand for gas rental by lessor.  (p. 452).

2. SAME—*Oil and Gas Lease—Construction—Rental of Gas Well.*

    The fact that some gas is found in one or more of the sands penetrated in drilling such well, and is afterwards run from the casing head into a gas line from wells on an adjoining lease operated by the same lessee, and the gas from all utilized in operating the wells on both properties, according to a custom prevailing among oil operators, does not render the lessee in such a lease liable to the lessor for annual gas rentals provided for in such lease.  (p. 454).

Error to Circuit Court, Marion County.

Action by Charles A. Prichard against the Freeland Oil Company.    Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Neely & Lively*, for plaintiff in error.

*B. L. Butcher* and *Harry Shaw*, for defendant in error.

MILLER, PRESIDENT:

In an action by lessor against lessee to recover gas rentals, alleged to have accrued to him, from an alleged gas well

drilled on his land, under his lease, the covenant of the lease relied on as the basis of his action is substantially as follows: "In consideration of the premises, the said party of the second part covenants and agrees, 1st, To deliver to the credit of the first party, his heirs or assigns, free of cost in the pipe line * * * * one eighth (1-8) part of all oil produced and saved from the leased premises; and to pay three hundred ($300.00) dollars per year for the gas from each and every gas well drilled on said premises; said payment to be made on each well within sixty days after well is completed, and to be paid yearly thereafter while it is a gas well."

On the trial plaintiff obtained a verdict and judgment for $2,669.13, and to that judgment defendant obtained this writ of error.

The lease is dated October 14, 1903. The well in question, the only one drilled on the land, was begun soon after the date of the lease and completed about August, 1904, and thereafter and up to the date of this suit, August 24, 1911, it was operated as an oil well, having produced some fifteen thousand barrels of oil, one eighth of which was delivered to the plaintiff lessor in accordance with the covenants of the lease.

Outside of his brother, who he says was a member of defendant corporation, but in what capacity he does not say, nor does it appear, and which he says was a year or two after the well was drilled, plaintiff does not pretend to have ever mentioned the subject of gas rentals, until about the time of bringing this suit. He never presented any bill, or made any demand for the gas rental. He says that about two years before giving his testimony on the trial at November term, 1912, he wrote the defendant company that he intended to make a demand for this rental, but did not tell them he expected to demand pay for five or six years back rent.

The declaration has the common counts in assumpsit, without bill of particulars, and a special count demands annual gas rentals alleged to have accrued to plaintiff under said lease, beginning with the —— day of October, 1904, to and including the —— day of October, 1910, at $300.00 per year, with interest on each of said payments from the day they became due respectively until paid, aggregating the sum of

$2,100.00. The damage laid in the writ and declaration is $2,500.00.

The sole question presented on the trial by pleadings and proofs, and by instructions given and refused, and motion for a new trial, denied, is, what is a "gas well" within the meaning of the contract and the intendment of the parties?

One of the cardinal rules of construction, where there is ambiguity or uncertainty in the meaning of the words of the contract, is to take the instrument by its four corners and read and interpret it in the light of all the facts and circumstances surrounding the parties at the time of making the contract, their relation to each other, the objects and purposes of entering into the contract, and their actions and conduct at the time and subsequently, and the things done under the contract in the execution thereof.

Literally speaking, perhaps, a gas well is any well which produces gas. But it cannot be supposed that the parties to this lease meant a well which produced gas in such quantity that when ignited it should burn like a mere taper on the sacred altar, or, as sometimes happens, should send upward a screaming, hissing shaft of flame, uncontrolled, and uncontrollable, and finally die like some great giant of self-exhaustion, a total loss to all concerned. Surely neither of these extremes could have been contemplated. Manifestly the parties contemplated a well having such a pressure and volume of gas, and considered with respect to its location, its proximity to the market, as could be operated profitably, and the gas utilized either on the leased premises, or disposed of commercially to others. True, we decided in *McGraw Oil Co. v. Kennedy,* 65 W. Va. 595, with respect to a lease for oil and gas for five years "and as long thereafter as oil or gas, or either of them, is produced by the party of the second part", that the lessor could not forfeit it because he thought gas was not being produced in paying quantity, the lessee claiming that it was, and being willing to pay the stipulated sum for the well as a gas well. We held that it was for the lessee to say whether gas was being produced in paying quantities, acting in good faith. The ground of that decision, was that as the lessor got the price of the gas well, he ought not to be heard to complain, if the lessee was willing to pay in good

faith therefor, and to protect his lease for oil and gas from forfeiture.

To the same effect is *Lowther Oil Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501.  But in *Carnegie Natural Gas Co.* v. *South Penn Oil Co.*, 56 W. Va. 402, involving a co-operating contract, under which, if an oil well was developed by either, the oil company was to get the well, by paying the cost, and if a gas well was developed, the gas company should get it, by paying the cost thereof, we decided, in effect, that "gas well" in the contract meant a well which developed gas in paying quantities, not a mere pittance of gas, or in a quantity that could not be marketed and used profitably by the owner.

In *Roberts* v. *Fort Wayne Gas Co.*, 40 Ind. App. 528, 82 N. E. 558, the lessor sued lessee for gas rentals alleged to be due him under a lease for oil and gas providing, if "gas is found in sufficient quantities to market the same", the lessor should be paid $100.00 per annum in advance for each gas well drilled, and that operations should be commenced and four wells completed within four months from date, or all paid for after that time, and that if lessee should fail to perform such work, or to pay the rental, he should in lieu thereof, and in full for damages for his default, pay annually during the term $100.00, for each of such wells.  The lessee drilled the four wells within the time prescribed, and for a time produced gas in paying quantities.  He also drilled an oil well.  When the gas wells ceased to produce gas in paying quantities he stopped paying the annual rentals therefor, but because the oil well continued to produce oil, did not surrender the lease.  The appellate court held that it was necessary for plaintiff to aver and prove that the gas wells continued to produce gas in paying quantities for the period for which rental was claimed, that the lease sued on was a lease to take the profit from land and when the profit became exhausted the liability to pay the consideration therefor was abrogated.  Citing numerous cases from Indiana, Pennsylvania and Ohio.

*Indiana Natural Gas & Oil Co.* v. *Wilhelm*, (Ind. App.) 86 N. E. 86, was an action for gas rentals under a lease providing that if gas was found in sufficient quantities to market, lessor's compensation should be a certain sum per well. The

complaint charged that gas was found in sufficient quantities to be marketed, and to be piped away to market, and that there were good markets within ten miles, and others farther away, where gas could have been delivered and sold at a profit to defendant. The jury were properly instructed, so the appellate court held, that in order to recover plaintiff must, by his evidence, affirmatively answer the question: "Did said wells, or either of them, produce gas in sufficient quantities to enable the defendant (appellant) to pipe the same away to market therefor, and realize therefrom and thereon a fair, reasonable, and just profit, everything considered?"

Now while the lease in that case provided for payment of gas rentals, if gas were found in sufficient quantities to market, a provision not in terms contained in the lease involved here, was not the plaintiff here bound to allege and prove that gas was produced in such quantities, considering the time, place, circumstances, and conditions referred to, that defendant did or could by reasonable effort have marketed, sold, or used the gas, with some reasonable profit? We think this must have been contemplated by the parties when they made their contract. And as to plaintiff, we have him admitting on cross-examination, that his understanding, at the time, was that a gas well meant one that would be profitable to operate.

It is contended, however, that as the evidence shows the well was enclosed by a casing head, the gas confined, and turned into a circuit line, and connected with other wells producing gas on an adjoining lease operated by defendant, and the gas from this line used in operating the wells on both leases, regardless of whether the gas from plaintiff's lease escaped to and was consumed on the adjoining lease, or vice versa, defendant should be required to pay the gas rentals for all the years covered by the declaration. We cannot bring ourselves to the conclusion that this is a just or reasonable interpretation of the contract. We find little in the adjudged cases throwing light upon this question. There is much evidence in the record showing and tending to show a custom prevailing in this state not to charge the lessee with gas when produced in small quantities along with oil, and used for

operating the well on the premises, unless the contract specifically provides otherwise. In *Wright* v. *Coal Co.*, 182 Pa. St. 514, it was decided, that under the custom which prevails in the anthracite coal region, coal used by a lessee in the operation of the furnaces of the mine is not subject to royalties, unless provision is made therefor in the lease, and we think this rule ought to be made applicable to the production of oil and gas under an oil and gas lease. Applying this rule in the case in hand, what are the facts disclosed by the record? It is not alleged nor proven that defendant ever sold a foot of gas or reaped any profit from the gas produced from the well. The evidence is overwhelming that when the well in question was drilled, in 1904, there was practically no market for gas in the vicinity of this well, and there was absolutely no market for gas produced from wells of its caliber. Not a witness swears that defendant by proper effort could have sold this gas locally or to the large gas companies engaged in piping and marketing gas commercially. A well was drilled on an adjoining tract about the same time, by another company, producing oil and about the same quantity of gas from the same sands, and one of the owners of that well swears its operation as a gas well was not even considered; that there was no market for the gas produced from such wells in that vicinity. Besides, defendant company about the same time drilled other wells on the Michael lease adjoining plaintiff's land and got gas along with oil in some of them, particularly No. 5, which they say was much stronger in gas than the well on plaintiff's land, and which they made the greatest effort to dispose of as a gas well to the gas companies, but without success; that these gas companies declined to take gas from wells producing gas along with oil. There is some evidence that by using an extra string of casing in a well producing oil and gas from different sands, the gas and oil can be kept separate, but that the casing is very expensive, and unless the well is of such caliber as to be profitable, and there is a market for it, the operator would not be justified in incurring the expense of putting in a double line of iron casing.

But it is contended that defendant connected up this well by a circuit pipe line with the gas wells on the Michael lease, and used gas from the Prichard well to operate the wells on

the Michael lease, and burned it in a couple of houses on the Michael land. Now the facts are that gas from the wells on the Michael lease was first piped to the Prichard well in 1905, and used to clean out that well, and to run the tools for a fishing job defendant had on hand at that well. After the work of cleaning out the well and the fishing job had been completed, that well was connected to the pipe line that had brought the gas from the other wells, and all run together for the mutual benefit of both leases, and the testimony of defendant shows, or tends to show, that the wells on the Michael lease, so joined up, produced more gas than the well on the Prichard, and that in fact the Prichard well got more gas from the Michael lease than it got from the Prichard, and that, therefore, defendant got no kind of profit, from the gas from the Prichard, as it had gas enough from the Michael lease to operate the wells on that property.

But the strongest phase of the case in favor of defendant is, that the well was operated not as a gas well, but as an oil well. There is little evidence that anyone connected with the property ever thought of treating it as a gas well, until the oil production had run so low as to bring small returns to lessor or lessee, and gas had come more into demand. Then it was, after seven years of operating the well as an oil well, plaintiff seems to have conceived the notion that his well was also a gas well, and that he ought to have the back gas rental, as well as the oil royalty, wherefore his suit.

We do not think a case has been made entitling plaintiff to the gas rental, and we are of opinion to reverse the judgment and remand the case for a new trial.

*Judgment Reversed.*