## KENYON et al. v. UNITED SALT CORPORATION.*

### No. 10394.

Court of Civil Appeals of Texas. Galveston.

Oct. 21, 1937.

Rehearing Granted June 7, 1939.

* Questions certified to Supreme Court withdrawn.

Bryan & Bryan, Guynes & Colgin, and Platt, West & Stevenson, all of Houston, for appellants.

Baker, Botts, Andrews & Wharton, of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 11th District Court—entered partly upon a jury's verdict in response to special issues, and partly on independent findings of the court itself from the law and evidence —wherein the appellee, a private corporation, was awarded an aggregate money recovery of $7,723.26 against the appellants, that is, Howard Kenyon and J. E. Browne (Kenyon and Browne), J. M. West, and West Securities Company, a private corporation, as for $2,166.85 in state and county taxes and $5,556.41 excess royalties on salt production, found by court and jury to have been wrongfully paid by the appellee to the appellants during the year of 1933 as a result of a certain duress exercised by the latter over the former, pursuant to the forfeiture provisions in a lease contract (together with assignments thereunder) existing between them for the production of salt and potash.

The appellants, Kenyon and Browne, had been the original lessees of Nannie Warren, lessor under a more comprehensive mineral lease than the part of it here involved, of December 15 of 1927, assigning their rights therein, in so far only as it related to salt and potash, to George Leland on January 9 of 1928, who in turn, on June 30 of 1932, conveyed his rights therein to this appellee, it assuming his obligations to Kenyon and Browne—as well as their like ones to Mrs. Warren— the land from which such salt production came being located in the Thomas Coghill Survey near Hockley in Harris County.

The stated assignment of the salt and potash rights of Kenyon and Browne to Leland, under which the appellee claims, imposed upon him, among others not deemed needful of mention, these three burdens and obligations:

(1) To pay Kenyon and Browne an overriding royalty of 4 cents per ton on all salt produced from the leased premises, further obligating himself to mine therefrom sufficient salt each year to pay them in overriding royalty a minimum of $6,000, the conditions and contingencies in and under which such minimum guaranty was

to be effective being at length specifically detailed in the assignment contract between them;

(2) This express provision, mutually termed by the parties hereto "the tax-clause"; "In addition thereto, the said George Leland, his heirs or assigns, shall pay all taxes of whatsoever kind or character which shall become due or owing on said leased lands and premises in consequence of the added value, if any, which the development of salt and potash, either or both, may give to said lands, actually covered by this assignment, and shall also be obligated to pay all taxes of whatsoever kind or character which may accrue or be levied against the products mined from said lands, viz., salt and potash, after same is extracted and becomes personal property. It being the spirit, intent and purpose of this agreement to absolve grantors herein from the payment of such proportionate part of the land taxes as above described and all taxes brought about by the increased valuation of said lands on account of the development of salt and potash and the production thereof, and to impose the same on said Leland, his heirs or assigns."

(3) Forfeiture recitations in his verbis, as follows: "It is further and finally mutually agreed and understood that the said George Leland, his heirs or assigns, shall at the election of grantors herein, forfeit all of the rights, title and interest in and to said leased mineral lands, as to salt and potash, in the event default is made on the part of said Leland, his heirs or assigns, in reference to any covenant, condition or obligation assumed by him under the original lease or imposed on him hereunder. * * * Said forfeiture shall divest said Leland, his heirs or assigns, of any and all rights, title, interest or estate in and to said leased premises, as well as in and to the minerals which have been forfeited, together with all improvements of whatsoever kind, or character, or description, which have been placed on said premises; and the cash consideration hereinabove recited as being received by these grantors shall be by them retained as liquidated damages. * * * And particular reference is made to said contract between said Warrens and grantors herein for the provisions relating to said forfeiture and wherein time is held to be of the essence."

The original lease from Mrs. Nannie Warren to Kenyon and Browne, referred to in the preceding quoted paragraph, expressly provided for forfeiture of the lease, in the event of non-payment by the lessee. It also provided as follows: "* * * Lessees herein, Howard Kenyon and J. W. Browne, hereby accept this lease under the terms and conditions above set out, and agree faithfully to perform the terms, conditions and covenants hereof imposed upon and assumed by them."

Appellant West, individually, and West Securities Company had acquired their several interests in the subject-matter of this suit prior to the appellee's assignment of June 30 of 1932 from Leland; that is, on the same day, June 18 of 1931, by deed of assignment to West and by deed of trust to the Securities Company, Kenyon and Browne conveyed (1) to the Securities Company all their rights under the Mrs. Warren lease and the assignments thereof, including specifically all "overriding royalties, rentals and moneys now owned by parties of first part, or that may hereafter become vested in them and due, owing and payable to parties of the first part." It also provided for foreclosure by the trustee without court proceedings. Kenyon and Browne expressly agreed to "pay and discharge the taxes and assessments as they are or may become payable", and the instrument providing that failure to perform this obligation would likewise authorize foreclosure by the trustee, that the trustee might in the event of default and prior to foreclosure "enter into and upon the property."

(2) The assignment to J. M. West was an unlimited conveyance to him of a definite interest in the properties and royalties covered by the deed of trust, placing him in like position with his co-defendants, Kenyon and Browne, with reference thereto.

The material part of this Kenyon and Browne assignment to Leland, which provided for the $6,000 minimum royalty, is as follows, the concluding clause thereof, which this court regards as the controlling one upon the issues here presented, being italicized by it: "The said George Leland in this connection obligates himself to mine from said premises hereinabove described a sufficient quantity of salt each year to pay grantors herein in overriding royalty the minimum sum of $6,000.00; and if said Leland, his heirs or assigns, shall not mine and produce a sufficient quantity of salt to pay said minimum sum

of $6,000.00 as overriding royalty to these grantors, as aforesaid, then in that event the obligation shall be imposed upon him under this instrument, and said Leland accordingly binds himself and agrees to pay to said Howard Kenyon and J. E. Browne, their heirs or assigns, the difference between the amount of such royalty so actually paid to them and the amount above guaranteed and the minimum sum which grantors herein shall receive as their overriding royalty annually on salt mined and produced from said leased premises. Or if salt is found in paying quantities, or if to the knowledge, actual or implied, salt exists in paying quantities under said land and premises covered by this assignment and the said Leland, his heirs or assigns, fail or refuse to mine or produce any salt from said premises, then in such event also lessors herein shall be entitled to the minimum sum of $6,000.00 annually as their overriding royalty on salt. The payment of this minimum overriding royalty on salt shall begin on the 1st day of July, A. D. 1929, and each year thereafter as long as this assignment, in so far as it relates to salt, shall continue and remain in full force and effect. *But it is the distinct agreement of the parties hereto that said George Leland, his heirs or assigns, shall in nowise be obligated to pay said overriding royalty on salt if that mineral cannot be found and produced in paying quantities on the above-described 982.25 acres of land.*"

The appellee having thus—in the setting outlined—grounded its cause of action for the refund of the taxes and minimum royalty monies the decree so awarded it upon its claim that, under the stated contractual relations and its own construction of the italicized part of the Leland assignment, it did not owe either of such amounts, but had been impelled to pay them both under threats and notification from appellants that all of its rights under the salt lease would be declared forfeited unless it did pay both sums on the dates they were to become due in 1933, the learned trial court submitted other fact issues to the jury, but found independently that, under the undisputed evidence and the law thereunto appertaining, the two separate payments so made in 1933 had been paid under the duress claimed.

■■ The correctness of this finding of duress is assailed in limine; this court, however, in the circumstances, is unable to find fault with that determination, construing the minimum royalty and tax clause provisions of the contract as it does; that is, as the italicized portion thereof seems to plainly portend, the appellee—as Leland's assignee—was not bound to pay that overriding royalty, if salt could not both be found and *produced in paying quantities;* there was never any question between the parties about the quantity of the salt being ample—indeed, they all at all times indisputably and mutually understood that it was practically inexhaustible—the only question ever being, whether or not, because of its known low grade and quality, it could at any time, in the conditions that might reasonably be expected to ensue, be *produced in paying quantities;* in other words, the parties here by express stipulation ameliorated the absoluteness of a minimum royalty right the appellants so ably contend for, under the operation of which the lessee may not fail to pay the agreed amount and yet hold on to the property. While no express finding on that feature was stated by the court nor any issues submitted to the jury affecting it (neither party having requested any), the trial court will be deemed to have made the finding on the facts, if necessary in support of its judgment, that the appellants did invoke the quoted forfeiture provisions in the contract in demanding payment of the sums visited upon them by the judgment, since there was ample testimony to support it; indeed, the testimony in that respect was undisputed, the appellee's president having testified that Mr. Monroe, who was shown to have been in charge of the administration of the lease for all the appellants—although he was only an officer for the West Securities Company— demanded of the appellee the payment of these tax and minimum royalty payments for the year in question about a month before their maturity, invoking the quoted forfeiture provisions in support thereof, and saying, in effect, that it was either for the appellee to pay them when due or get out; neither was there any contrary testimony from either Mr. Monroe or any others of the appellants or their representatives, nor any indicia otherwise weakening this uncontroverted showing of such pressure upon the appellee to enforce the payments vel non; wherefore, although this uncontradicted testimony was given by an interested party, it furnished proper support for the imputed finding. Thomas & Co. v. Hawthorne, Tex.Civ.App., 245

S.W. 966; Golden v. First State Bank, Tex.Civ.App., 38 S.W.2d 628; Whitham & Co. v. Allen, Tex.Civ.App., 64 S.W.2d 1024.

■ Not only so, but, further, since all of the appellants, in the inter sese relations shown above to have existed, stood in the same position as though these exacted payments from the lessee, the reports concerning its operation, etc., had been directly made to each of them, instead of to Mr. Monroe as president of the West Securities Company for them, they each and all were liable to the return of them to the appellee, they having been exacted of it under their insistence. Young v. Brooks, Mo.App., 56 S.W.2d 794.

■ It is equally well settled that in instances like this—that is, these forfeiture provisions reciting on the face thereof that they were enforceable without resort to any court—the doctrine of duress was none-the-less available to this appellee because it saw fit to yield compliance with the demands for payment so made upon it, without first seeking relief therefrom in court. Dale v. Simon, Tex.Civ.App., 248 S.W. 703, affirmed by the Commission of Appeals in 267 S.W. 467; Austin National Bank v. Sheppard, Comptroller, Tex.Com.App., 71 S.W.2d 242, 243; Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U. S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas. 1913C, 1050; Ward v. Scarborough, Tex. Com.App., 236 S.W. 434; City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973, 77 A.L.R. 709; Kilpatrick v. Germania Life Ins. Co., 183 N.Y. 163, 75 N.E. 1124, 2 L.R.A.,N.S., 574, 111 Am.St.Rep. 722; Gray v. Freeman, 37 Tex.Civ.App. 556, 84 S.W. 1105; Williamson, Halsell, Frazier Co. v. Ackerman, 77 Kan. 502, 94 P. 807, 20 L.R.A.,N.S., 484.

The appellee alleged, and offered proof in support thereof, that it neither did produce nor could have produced salt in paying quantities from the property during either of the years of 1933 and 1934, despite its exercise of the "reasonable diligence" to do so that paragraph 10 of the original lease contract imposed upon it, in consequence seeking refunds for like minimum royalty payments it had made for both of them; but the jury found it had made a profit on the production for one of them, whereby it became obligated accordingly, hence the court only gave it a refund upon that one year.

In this connection the appellee files a cross-assignment against that adverse action, claiming that since it had used such diligence in its continued effort throughout both such years to produce salt for the market, and had paid the per ton royalty specified, it was entitled to recover for the other year also, having been erroneously denied credit for certain reasonable expenditures then made in such efforts; but this court is unwilling to disturb the trial court's finding upon that feature, and overrules the cross-assignment accordingly without detailed discussion.

■ In support of the conclusion—drawn from the assignment contract, supra—that it was only liable for the overriding royalty, provided salt could be so profitably produced, and was not bound therefor absolutely, as appellants insist, these authorities may be cited: 31 Texas Jurisprudence, page 908, § 235, page 824, § 180; Texas Company v. Roos, 5 Cir., 43 F.2d 1; Texas Pacific Coal & Oil Co. v. Bruce, Tex. Civ.App., 233 S.W. 535; Masterson v. Amarillo Oil Co., Tex.Civ.App., 253 S.W. 908, writ dismissed; Hanks v. Magnolia Petroleum Co., Tex.Com.App., 24 S.W.2d 5; Indiana Natural Gas & Oil Co. v. Wilhelm, 44 Ind.App. 100, 86 N.E. 86; Prichard v. Freeland Oil Co., 75 W.Va. 450, 84 S.E. 945, L.R.A.1915D, 1186; Muncey Coal Mining Co. v. Muncey, 206 Ky. 638, 268 S. W. 293; Freeport Sulphur Company v. American Sulphur Royalty Co., 117 Texas 439, 6 S.W.2d 1039, 60 A.L.R. 890; Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576.

■ As concerns the assignments against the allowance of the tax refund, this counter-proposition in the appellee's brief, together with the appended authorities in support thereof, is adopted by this Court as a satisfactory answer, to-wit: "The tax-clause was ineffective to impose any liability for taxes on the appellee, and the jury found that it was not susceptible of the meaning attempted to be given it by appellants' testimony and pleadings, when their requested issue No. One was submitted by the court, hence appellants, Kenyon and Browne, having originally assumed liability for all taxes, and not having absolved themselves from any definite proportion thereof, and having reserved overriding-royalties and other property rights, in making their assignment to Leland, under whom appellee claims, continued the

tax-liability in themselves and the assignees of their overriding-royalties, to-wit, West · and West Securities Company." Stitz v. National Producing & Refining Co., Tex. Civ.App., 247 S.W. 657; 26 R.C.L., pages 454 to 459, including cited cases.

No reversible error was involved, it is thought, either in the receipt of the appellee's exhibit 20 in evidence as a profit-and-loss or operating-cost statement in the circumstances presented, or in the court's refusal to specifically charge the burden of proof to have been on the appellee as to issues 2 to 13, inclusive; wherefore these assignments are overruled without extended discussion.

Concluding upon the whole cause that the issues raised were fairly tried and properly determined upon the law and the evidence, the judgment of the trial court will be affirmed. All concur in this opinion, except that Justice CODY acquiesces in the construction placed therein upon the assignment contracts involved with some reluctance, awaiting the fuller light of a rehearing.

Affirmed.