## HANKS v. MAGNOLIA PETROLEUM CO.
### (No. 1141—5429.)

Commission of Appeals of Texas, Section B. Feb. 12, 1930.

Scarborough & Wilson and Scarborough, Ely, Brown & King, all of Abilene, for plaintiff in error.

W. H. Francis and A. S. Hardwicke, both of Dallas, and Conner & McRae, of Eastland, for defendant in error.

LEDDY, J. Plaintiff in error's right to a judgment against defendant in error for conversion of gas produced from certain premises, situated in Stephens county, Tex., is primarily dependent upon whether the proof offered by him justified a finding that he had in 1909 completed a well on said premises producing gas in paying quantities.

The findings of the trial court upon this issue are as follows:

"That the contract plead by plaintiff was entered into between the plaintiff, S. M. Hanks on the one hand, and J. T. Miller and wife, owners of the land, on the other hand, November 17th, 1908; that thereafter in the early part of 1909 the plaintiff S. M. Hanks, in compliance with the terms of such contract, drilled a well on the land described in the contract to a depth of 200 feet and discovered petroleum gas in quantities amounting to at least 1,000,000 cubic feet per day.

"That the plaintiff drilled no other well on said premises and that said well as was drilled by him was capped during the year 1909 and no further efforts were made to drill or prospect for the discovery of minerals in said land by plaintiff, or to produce or market the same after the year 1909, and that he never at any time marketed any minerals or gas produced from said well drilled by him on said premises, there being no market at the time said well was drilled by him.

"That when plaintiff drilled said well he used a light machine and during the year 1909, after capping said well, moved said drilling machine and equipment from said premises."

Unlike oil, gas cannot be produced and stored. In order that it may have a value, there must exist pipe lines through which it may be marketed. If no such facilities exist in the vicinity in which a gas well is brought in, the question as to whether the gas produced by such well is in paying quantities must necessarily depend upon the cost of construction of facilities for carrying such product to a prospective market and the price received therefor. The returns from the sale thereof must be such as would leave a profit in marketing the gas under such conditions.

In order for plaintiff in error to comply with the terms of his lease that gas be found in paying quantities within the period of one year, he was bound to show he discovered gas on the premises within the time prescribed in sufficient quantities to warrant the use of same in some market, and that the probable income therefrom would be in excess of the actual marketing costs. See note in Summers Oil & Gas, § 100, p. 320.

The words "paying quantities" as applied to a gas lease mean that the gas discovered must be sufficient to pay the lessee a profit, though small, over operating and marketing expenses, although it may never repay the cost of drilling the well. Aycock v. Paraffine

Oil Co. (Tex. Civ. App.) 210 S. W. 851; Masterson v. Amarillo Oil Co. (Tex. Civ. App.) 253 S. W. 908; Summers Oil & Gas, p. 318.

The rule on this subject is correctly stated in the case of Barbour, Stedman & Co. v. Tompkins, 81 W. Va. 116, 93 S. E. 1038, 1040, L. R. A. 1918B, 365, in which the court had before it the question as to whether there had been a compliance with the terms of a lease requiring gas to be found in paying quantities. In discussing the question as to the meaning of the words "paying quantities," the court said:

"The question is not how much may be derived from the sale of the gas, but rather whether it may be sold in the market for consumption as fuel with reasonable expectation of profitable returns in excess of costs and expenses. Whether there is a reasonable basis for the expectation of profitable returns from the well is the test. If the quantity be sufficient to warrant the use of the gas in the market, and the income therefrom is in excess of the actual marketing cost, the production satisfies the term 'in paying quantities.'"

Indiana Natural Gas & Oil Co. v. Wilhelm, 44 Ind. App. 100, 86 N. E. 86, was a case involving an action for gas rentals under a lease providing that, if gas was found "in sufficient quantities to market," the lessor's compensation should be a certain sum per well. It was there decided that the trial court properly instructed the jury that plaintiff was not entitled to recover, unless the proof offered by him affirmatively answered the question: "Did said wells, or either of them, produce gas in sufficient quantities to enable the defendant to pipe the same away to market therefor and realize therefrom and thereon a fair, reasonable and just profit, everything considered?"

In Prichard v. Freeland Oil Co., 75 W. Va. 450, 84 S. E. 945, L. R. A. 1915D, 1186, a similar conclusion was reached where the court had under consideration the question as to when the lessee was due rentals on a gas well. It was decided that, in the contemplation of the parties to the lease, to be a well producing gas, it must be one, taking into consideration its location with reference to any market for gas, its capacities as a gas producer, which could be profitably operated.

■ The trial court did not find that the well completed by plaintiff in error produced gas in paying quantities within the contemplation of the terms of the lease, and, in our opinion, the evidence furnished no basis for such a finding. The record is wholly devoid of evidence showing that there were any facilities for marketing the gas or any nearby localities or industries which might have furnished a profitable market therefor. No attempt was made to show what the gas could have been sold for at any probable market, nor was there any evidence tending to show

that the well was situated in such proximity to any prospective market which would justify the construction of a pipe line for marketing same. Whether, taking into consideration existing conditions in the surrounding territory, a pipe line could have been constructed and a market thereby obtained which would have resulted in marketing the gas at a profit above the expense of providing necessary facilities, is left wholly to speculation and conjecture.

What might be determined to be gas in paying quantities in one well would not be so considered in another located in a different territory. A well producing much less gas than the one drilled by plaintiff in error might be in paying quantities because of existing pipe line facilities furnishing a means of marketing the gas at a profit above the cost of operating the well. On the other hand, a well producing a large amount of gas drilled in territory remote from any market and without pipe line facilities might not be in paying quantities, unless it was shown that the amount of gas produced was sufficient to justify the construction of transportation facilities and the marketing of such gas would yield a return over and above the expense of providing the same. "A well producing oil and gas in sufficient quantities to be profitably utilized if there was a market for it near at hand may be entirely valueless," says Mr. Thornton in his Work on Oil & Gas, "if its production must find a market at a distance too great to justify its transportation by a line of its own." 4th Ed., p. 432, § 151.

Plaintiff in error was granted the privilege of obtaining title to one-half of the gas in the land covered by his lease upon the express condition that he should discover gas in paying quantities within the period of one year. By this was clearly meant that a completed well would produce a sufficient amount of gas that the production therefrom could be disposed of at a profit over expenses of marketing.

The claim is made that an inference is justified that the well drilled by plaintiff in error produced gas in paying quantities from the fact the record discloses that defendant in error fourteen years later marketed gas from its wells on the same premises at six cents per thousand cubic feet. The difficulty with this line of reasoning is that plaintiff in error was bound by the terms of his lease to drill a well within a period of one year from the date thereof which would at its completion produce gas in paying quantities. He was not privileged under the terms of the lease to cap the well and await some fourteen years until the growth of population and industries in the territory in which the well was located, together with other gas production, justified the construction of pipe line facilities for marketing the gas produced from such well. The burden was upon him to

prove that there was a reasonable expectation and probability of a market for the gas produced from his well at the time of its completion. The true test was as to whether the gas was in paying quantities under the conditions existing in 1909. The question could not properly be determined by the situation presented in 1923.

█ If it be assumed that the question as to whether the well drilled by plaintiff in error produced gas in paying quantities at the time of its completion was one of fact to be determined by the trial court under all the facts and circumstances shown by the record, that court having made no express finding on such issue, we must presume, in support of the judgment, that the same was determined adversely to plaintiff in error. Silliman v. Oliver (Tex. Civ. App.) 247 S. W. 902; Smith v. Patterson (Tex. Civ. App.) 294 S. W. 984.

█ The judgment rendered being a proper one under the undisputed facts, it is our duty to affirm the same, even though the trial court gave wrong reasons therefor. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185; Bowles v. Brice, 66 Tex. 724, 2 S. W. 729.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.