**UPSHAW v. NORSWORTHY et al.**

No. 3067.

Court of Civil Appeals of Texas.

Eastland.

March 12, 1954.

Rehearing Denied April 30, 1954.

Storey, Armstrong & Steger, J. Cleo Thompson, Dallas, Ratliff & Ratliff, Haskell, Seaberry & Seaberry, Eastland, for appellant.

Jay R. Jameson, Abilene, Estes & Cantwell, Dallas, Tom Davis, Haskell, Frank King, Terrell, for appellees.

LONG, Justice.

On May 12, 1941, Blanche M. Wylie, et al., executed and delivered to T. A. Upshaw a warranty deed conveying approximately three and one-half sections of land in Stonewall County. This deed contained the following reservation:

"The grantors herein retain and reserve unto themselves, their heirs and assigns, an undivided non-participating royalty interest in the land herein conveyed for a term of ten (10) years from the date hereof; and so long thereafter as oil or gas, or other minerals, are produced from the land, if production is being had on said land at the end of said ten year period; the intention of this reservation being that if oil or gas, or other minerals, are discovered and are produced from said land herein conveyed, or any part of it during the period of

ten years from the date hereof that the grantors, their · heirs and assigns, will have and ·be entitled t o a ·one-third (⅓) interest in the royalty, or ·royalties, paid from the production of said minerals, it being distinctly understood, however, that grantee, his heirs or assigns, have the sole and exclusive right to execute oil, gas and mineral leases on the land herein ·conveyed, and grantors will not be re- ·quired to join in the execution of such lease, or leases. This reservation will cease to be in effect and come to an end absolutely after the expiration of ten (10) years from this date, unless ·oil or gas, or other minerals are then beng produced from said lands, and on such date and under such contingency the full and complete title to the min- ·erals in said land will revert to the .grantee, his heirs and assigns, and .grantors will have no further right or title to, or interest in, said minerals. ·Grantee, his heirs or assigns will be ·entitled to all lease bonus payments .and all lease rental payments which may accrue or become due on or from mineral leases hereafter executed by grantee, his heirs or assigns, on said described land, or any part of it."

Upshaw instituted this suit against appellees, the present owners of the mineral interest heretofore reserved, alleging that the royalty reservation had expired at the ·end of ten years because oil, gas or other minerals· were not being produced from the land at the end· of said term. Upon a trial before the court without a jury, judgment was entered· that· plaintiff take nothing by his suit. From this judgment, Upshaw has appealed.

■ It is the contention of appellant that the court erred in failing to render judgment for him because the reservation of the term royalty expired under its own terms at midnight, May 12, 1951, for the reason that oil, gas or other minerals were not then being produced from said land within the meaning of the terms of the· reservation. There were no findings of ·fact or conclu-

sions of ·law filed and none were requested. This being a trial before the court without a jury it is our duty to affirm the judgment of the·trial court if this can be done on any reasonable theory supported by the evidence and authorized by law. · Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W. 2d 609, 23· A.L.R.2d 1114; Strickland v. Humble Oil & Refining Co., Tex.Civ.App., · 181 S.W.2d 901.

■ The evidence discloses that some time prior to May 12, 1951, the drilling of · a well was commenced on said land. On May 1, 1951, a drill stem test was taken and oil flowed from the well into the pits. This oil was not saved. On May 2nd or 3rd, · oil again flowed from the well into the · pits. ·On May 7, 1951, another drill stem test was made and the well flowed over 50 barrels into a storage tank. At that time, casing ·was run into the well which ·was set and· cemented. Tubing, was ·run and perforated and the well was connected to a 500 barrel storage tank. On May 12, 1951, the well was swabbed through the tubing and it flowed oil which was turned into the 500 barrel storage tank about 11:30 in the morning and produced over 51 barrels of oil before it was shut off at about 6:30 p. m. There is evidence that 37.3 barrels of oil were sold from the well on May 11, 1951. There is evidence that the well continued to produce and there has been sold therefrom, through February, 1953, 24,542.19 barrels of oil, having a net value of $61,404.40. We believe the above evidence is sufficient to support the implied finding of the trial court that production of oil in paying quantities was being had on said land at the end of the ten year period. It is undisputed that the well was a producer at the end of the ten year period. It is undisputed that the production was in paying quantities. It is undisputed that oil was sold from said well before the end of said period. It is undisputed that the well has continued for nearly two years to produce oil in paying quantities. We believe the trial court was correct in holding that the reservation in the deed was still in effect and had not terminated.

Appellant relies upon Home Royalty Ass'n, Inc., v. Stone, 10 Cir., 199 F.2d 650. We have carefully considered that case and we believe that it is not controlling here. In that case, the court held that under the law in Kansas, where a mineral conveyance is for a term of years and as long thereafter as oil or gas are produced from the lands, that the mere discovery of gas during the primary term is not sufficient to extend the rights of the grantee beyond the primary term but that there must be actual production as distinguished from discovery during the primary term. We are not in conflict with this holding. There was actual production of oil on the land in the instant case and some of this oil was sold prior to the expiration date of the primary term. We believe the following Texas cases support our conclusion here: Bain v. Strance, Tex.Civ.App., 256 S.W.2d 208; Cowden v. General Crude Oil Co., Tex.Civ.App., 217 S.W.2d 109; Hanks v. Magnolia Petroleum Co., Tex. Com.App., 24 S.W.2d 5; Cox v. Miller, Tex. Civ.App., 184 S.W.2d 323, Writ Ref.

In Bain v. Strance, supra, it will be observed that the Waco Court, in construing a similar reservation in a deed, held that if oil or gas was discovered on the land prior to the day upon which the grant would terminate, a reasonable time after such discovery would be allowed for same to be marketed before a forfeiture or termination of the fee would be permitted. We have a stronger case here on the facts. Not only was oil in paying quantities discovered, but it was actually produced and sold from the land before the end of the primary term. Furthermore, the well continued to produce oil in paying quantities thereafter.

Appellant urges that the evidence showed the only oil recovered up to midnight on May 12, 1951, was by means of swabbing and that such constituted discovery of oil but not production thereof within the meaning of the reservation. He also urges that there was a violation of some rule of the Railroad Commission in selling

the first oil produced from the land. We do not agree with either of these contentions. There is evidence that the methods used in producing the first oil is a recognized method in the oil industry. There is no showing that appellees violated any known rule of the Railroad Commission in selling the oil.

It is our conclusion that the evidence shows that there was production being had on the land in paying quantities on May 12, 1951, and that the trial court correctly so held.

The judgment is affirmed.