Gertrude L. ARCHER et al., Appellants,

v.

SKELLY OIL COMPANY, Appellee.

No. 6771.

Court of Civil Appeals of Texas.

Amarillo.

May 26, 1958.

On the Merits June 2, 1958.

Rehearing Denied June 23, 1958.

Sanders, Scott, Saunders & Smith, Amarillo, C. J. Humphrey, Amarillo, of counsel, for appellants.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, H. A. Berry, Amarillo, of counsel, Gayle Pickens, Tulsa, Okl., for appellee.

PER CURIAM.

On May 7, 1958, following oral arguments of this case before this court on May 5, 1958, appellants filed a motion they styled, "Appellants' Motion under Rules 428 and 429, Texas Rules of Civil Procedure," requesting the right to file an affidavit by one of appellants' attorneys, C. J. Humphreys, with respect to the fact that no oral testimony was heard in the court below on motion by all parties for summary judgment

and tendering certain correspondence between the trial judge and the attorneys, together with an original and copy of instruments styled on their covers as "Q. and A. Statement of Facts," and designated Exhibits G and I. This motion is contested by appellee with cited authorities and written argument. Rules 428 and 429, T.R.C.P. under which appellants seek to file the materials above described provide as follows:

"If anything material to either party is omitted from the transcript or statement of facts, the parties by stipulation, or the trial court, either before or after the record has been transmitted to the appellate court, or the appellate court, on a proper suggestion or on its own initiative, may direct a supplemental record to be certified and transmitted by the clerk of the trial court supplying such omitted matter."

Rule 429:

"Should it be apparent during the submission or afterwards that the case has not been properly prepared, as shown in the transcript, or properly presented in the brief or briefs, or that the law and authorities have not been properly cited, which will enable the court to decide the case, it may decline to receive the submission; or, if received, may set it aside and make such orders as may be necessary to secure a more satisfactory submission of the case; or should it appear to the court, after the submission of the cause, that the statement of facts has been prepared in violation of the rules, the court may require the appellant to furnish a correct statement of facts, and upon his failure to do so may disregard it. If the violation of the rule be flagrant, the court may disregard the statement of facts altogether, unless counsel for the appellant shall make it appear by affidavit or otherwise that he prepared a statement giving what, in his opinion, he deemed a fair presentation of the evidence, prepared in ac-

cordance with the rules, and that he was unable to get it agreed to or approved. Should counsel for appellant show that he has used due diligence to have a proper statement of facts filed, and that the statement of facts as prepared is the result of the fault of the counsel for the opposite party, such as his failure or refusal to agree to a proper statement presented to him, the costs of the statement, if ordered, shall be taxed against the appellee."

Rule 381 T.R.C.P. provides:

"(a) When an appeal is taken from a judgment rendered in a civil cause tried in either the district court, county court, or county court at law, the party appealing shall have fifty days after the rendition of final judgment or order overruling motion for new trial, if such motion is filed, or perfection of writ of error, within which to prepare and file his statement of facts and bills of exception in the trial court.

"(b) Upon application of the party appealing, the judge of the court may, in term time or vacation, for good cause shown, extend the time for filing such statement of facts and bills of exception, but the time shall not be extended in any case so as to delay the filing thereof beyond the time for filing the transcript, bills of exceptions, and statement of facts in the Court of Civil Appeals, as prescribed by these rules or as extended by said court. As amended by order of Oct. 10, 1945, effective Feb. 1, 1946."

Exhibits "G" and "I" attached to appellants' motion are not approved by the parties, their counsel or the trial judge and do not show to have ever been filed in the office of the Clerk of the District Court of Hansford County, the court in which the case was tried.

Rule 386 provides:

"In appeal or writ of error the appellant shall file the transcript and state-

ment of facts with the clerk of the Court of Civil Appeals within sixty days from the rendition of the final judgment or order overruling motion for new trial, or perfection of writ of error; provided, by motion filed before, at, or within a reasonable time, not exceeding fifteen days after the expiration of such sixty-day period, showing good cause to have existed within such sixty-day period why said transcript and statement of facts could not be so filed, the Court of Civil Appeals may permit the same to be thereafter filed upon such terms as it shall prescribe. As amended by order of October 10, 1945, effective Feb. 1, 1946."

Rules 381 and 386 not having been complied with so far as time limits in which to file such materials as those requested, the materials tendered not having been filed with the clerk below and approved by the attorneys and trial judge or any good reason given for failure so to do, we are without authority to grant appellants' motion. Mossler Acceptance Co. v. Burwell, Tex. Civ.App., 205 S.W.2d 622; Punch v. Gerlach, Tex.Civ.App., 260 S.W.2d 240; Parrish v. Parrish, Tex.Civ.App., 214 S.W.2d 700; Seaboard Fire & Marine Ins. Co. v. Halbert, Tex.Civ.App., 173 S.W.2d 180; Crawford v. Crawford, Tex.Civ.App., 256 S.W.2d 875; Jaeger v. Cullen, Tex.Civ. App., 183 S.W.2d 584; Lane v. Fair Stores, Inc., 150 Tex. 566, 243 S.W.2d 683; Byrnes v. Blair, Tex.Civ.App., 183 S.W.2d 287.

### On the Merits

CHAPMAN, Justice.

This appeal is from a summary judgment granted Skelly Oil Company by the trial court. Gertrude L. Archer, a widow of Hansford County, Texas; Harriet Thomas Collard, a widow; Harriet Thomas Collard and R. L. McClellan, executrix and executor respectively of the estate of J. R. Collard, deceased, brought this suit against Skelly Oil Company in trespass to try title and alternatively sought termination of an oil and gas lease on 2¾ sections of land upon which the primary term had ended. The oil and gas lease entered into between Mrs. G. L. Archer and the Skelly Oil Company was on a regular Oil and Gas Producer's Eighty-eight Form, was dated August 5, 1943, provided for a primary term of 10 years but had the following rider or addition added to the lease before the grantor, Mrs. Gertrude L. Archer would sign it:

"In the event of gas production being obtained on the above 3,040 acre lease, not more than 640 acres shall be held by each well, and annual rentals shall be paid on the balance of the acreage. In the event that a gas well is drilled, the revenue from same shall be equal to, or exceed the amount of the annual rental payments, based on one well to each section. In no event shall the payments received by the lessor amount to less than $3,040.00 during any one 12-months period. This rider and provision shall be controlling over any conflicting provisions contained in the printed form attached hereto and made a part hereof."

The property described in the oil and gas lease was all of Sections 4, 282, 285 and 292 and the south one-half and northwest one-fourth of Section 284, totaling 3,040 acres. The parties named as plaintiffs other than Gertrude L. Archer acquired their interest by conveyance from Mrs. Archer after the original oil and gas lease was executed.

All parties in the court below filed motions for summary judgment. The trial court, after oral arguments on the pleadings, affidavits, motions and replies, and requests for admissions and replies, the depositions and exhibits thereto, and the certified copy of the instruments filed, denied the motion for summary judgment of plaintiffs, appellants herein, and granted summary judgment for Skelly Oil Company, defendant below, holding the oil and gas

lease entered into on August 5, 1943, for the primary term of 10 years was still in force and effect on all the 3,040 acres at the time said summary judgment was granted on November 11, 1957.

■ The law is well settled that no appeal or right of review exists for one whose motion for summary judgment under Rule 166 T.R.C.P. is denied. A.A.A. Realty Co. v. Neece, Tex.Civ.App., 292 S.W.2d 811 (affirmed by the Supreme Court in 299 S.W.2d 270); Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670. Consequently, the only relief appellants had from the action of the trial court in awarding summary judgment for appellee Skelly Oil Company was to appeal to this court, from the judgment awarded appellee.

■ The underlying purpose of our summary judgment rule, adopted from the Federal Rules of Civil Procedure, was to eliminate patently unmeritorious claims or untenable defenses and to allow summary judgment only when there is no disputed fact issue. Additionally, the duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility. Also, the burden of proving that there is no genuine issue of any material fact is upon the party moving for judgment and all doubts as to the existence of a general issue of any material fact must be resolved against the party seeking the summary judgment. All these rules of law announced in this paragraph as applicable to a consideration by the trial court of a motion for summary judgment have been recently stated by our Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929, 932. That case is also authority for the proposition that a trial court in determining a motion such as we have under consideration should accept as true all evidence of the party opposing the motion for summary judgment which tends to support such party's contention and give him the benefit of every reasonable inference which

properly can be drawn in favor of his opposition to the judgment. The Gulbenkian case further holds, "that if a motion involves the credibility of affiants or deponents, or the weight of the showings or, it is said, a mere ground of inference, the motion will not be granted."

Under the record of this case in order for the trial court to have properly granted summary judgment for appellees it had to find the oil and gas lease, with the rider attached, as a matter of law extended the lease beyond the primary term on all the 3,040 acres by virtue of production of gas on Sections 285 and 292 within the period of the primary term, and this regardless of the intention of the parties at the time of the execution of the oil and gas lease.

In addition to the conditions included in the Oil and Gas Producers Eighty-eight Form the Parties were bound by the rider attached thereto. Though we are not saying this addition or rider to the lease is so plain as not to reflect a shadow of doubt as to its meaning, let us examine carefully the four sentences in an effort to arrive at the meaning thereof. The first sentence provides, "In the event of gas production being obtained on the above 3,040 acre lease, not more than 640 acres shall be held by each well, and annual rentals shall be payed on the balance of the acreage." Under the record of this case this sentence to this writer means that production on one part of the total acreage did not relieve the lessee of paying delay rentals on the entire acreage but had the effect of isolating the sections on which there was production from the other land so far as delay rentals were concerned just as if the two 640 acre tracts comprised a separate lease. We believe the clause in the sentence which says, "not more than 640 acres shall be held by each well," intended and should be interpreted to mean that all the 3,040 acres outside of that on which there was production of gas to the extent of one well for each 640 acres would revert to the owners at the end of the primary term. Particularly do we say the clause

should be so interpreted when it is considered in connection with the depositions in the record of Mrs. Gertrude L. Archer and her son, Dan Archer, if their testimony is to be believed. In any event, from the record in this case the clause together with said depositions constituted an issue of fact if our interpretation of the lease is not correct.

The second sentence of the rider which says, "In the event that a gas well is drilled, the revenue from same shall be equal to, or exceed the amount of the annual rental payments, based on one well to each section." This sentence simply guarantees to the lessor that she would have as much net money in case of production of gas as she would have in the event the lessee made no effort to develop the lease or any part of it and that she would not be limited to the dollar an acre guarantee in the event her ⅛ of the gas paid more than $640 for each section on which there was production.

The third sentence says, "In no event shall the payments received by the lessor amount to less than $3,040 during any 12-months period," seems to this writer to be a reiteration or an emphasis on the fact that the lessor during the primary term, whether production is had or not, would be entitled to as much as $3,040 for each 12-months period. The last of the four sentences in the rider simply makes the addition added to the lease controlling over any conflicting provision in the regular lease form.

■ There is no question from the record of this case but that this rider is an addition to the lease made strictly for the benefit of the lessor and we know of no reason, logic or law precluding it if the lessee was willing to take it under those conditions. Gas production on Sections 285 and 292, within the meaning of the rider, obviated the payment of rentals on those two sections and continued the life of the lease thereon so long as the revenue to the lessor equaled or exceeded $640 to each section. This statement is not to say that

the other part of the lease, construed in accordance with the interpretation by our Supreme Court in Garcia v. King, 139 Tex. 578, 164 S.W.2d 509 of the word "produced" as used in the "thereafter" clause of the lease, could not also terminate the lease at the end of the primary term on the two sections under production if production was not in paying quantities, but we are not just now considering that question. We do believe the case of Kidd v. Hickey, Tex.Civ. App., 237 S.W.2d 389 furnishes some authority for the right of a lessor by contract with the lessee in an oil and gas lease to divide a large tract into smaller tracts for the purpose of requiring different conditions on the tracts on which there has been no development to those tracts on which there has been production, which is just what the rider did in the instant case. In interpreting the rider to the lease we are not unmindful of the cases of Lido Oil Co. v. W. T. Waggoner Estate, Tex.Civ.App., 31 S. W.2d 154; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Henshaw v. Texas National Resources Foundation, 147 Tex. 436, 216 S.W.2d 566 and Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160. In the first place the conditions of the rider in this case are quite different to the language used in any of the cases just cited. Secondly, those cases did not have the questions of testimony of the parties explaining the purpose intended by the language used. Thirdly, none of those cases involved summary judgment where parties were not given the opportunity to cross examine witnesses and test their opportunity to know what they profess to know and their source of information.

■ In any event, and even if we should be in error in our construction of the rider in the lease under consideration, the trial court was without authority from the record in this case to grant the summary judgment. Among the records of the case sent to us by the trial court from which to determine if the summary judgment was properly granted were depositions of a number of persons, including the grantor in

the lease, Gertrude L. Archer, and her son, Dan Archer. Their testimony in effect was that the purpose of the rider being inserted into the lease was to insure the termination at the end of the primary term of the sections that were not drilled on and not producing, and that the Skelly Oil Company employee, Mr. Arthurs, who took the lease understood it that way. Mrs. Gertrude L. Archer testified in her deposition as follows:

"Q. Did you have in mind that production of gas in paying quantities would carry the lease beyond its primary term?

"A. No, we didn't. The section that they drilled on we expected them to hold that, but we did not expect them to try to hold the rest of it. The sections that weren't drilled on, that was not producing * * *."

Mrs. Archer further testified: "In executing the lease, it was my intention and what I had in mind when we made the lease was that we would get back all undeveloped land."

"Q. Did Mr. Arthurs say that he so understood the lease that way?

"A. I am sure he did."

Dan Archer, an attorney of Perryton, Texas, and one of the sons of the grantor testified: "And it was our thoughts * * * in other words if we had just wanted to make one big old blanket lease of 3,040 acres it would have been no use of us a-going in and putting anything at all in reference to how much two wells would hold or how much revenue one well would provide for.

"And we discussed that with Mr. Arthurs. And we did want to make it where they would have the ten years to do whatever developing they wanted to do and what they didn't want to do, we wanted it back for the consideration in cash that we were receiving was negligible. It was only a two-dollar per acre bonus on a ten year

lease and which we did not care to have the lease just an old, straight eighty-eight lease.

"And all of that was discussed with Mr. Arthurs. It was discussed very thoroughly. And this provision was typed and retyped to get the words that would suit in the deal. And finally on the 5th of August, 1943, it was executed by my mother."

 Even though we should be wrong in our interpretation of the rider and even if said rider is not ambiguous the testimony of the grantor and her son is admissible to prove the circumstances out of which that part of the instrument had its birth and which surrounded the adoption. Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007, at page 1010, syl. 1–2.

In Scott v. Walden, Tex.Com.App., 165 S.W.2d 449, 452, it is said:

"Whether or not, strictly speaking, the language of the grant is ambiguous need not be discussed, for even though it is not ambiguous on its face parol evidence was nevertheless properly admitted to apply the language to the subject with which it dealt for the purpose of ascertaining the real intention of the parties."

Practically the same rule as that just quoted has been announced by our Supreme Court in Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579, 583, wherein that court said:

"It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties."

Our Supreme Court in Henshaw v. Texas National Resources Foundation, 147 Tex. 436, 216 S.W.2d 566, 570 where the court had received evidence of subsequent inter-

pretating actions of the parties in a suit involving forfeiting of an oil and gas lease said:

"If there is any doubt about the meaning of the various terms of the contracts before us, the Court may consider the interpretation placed upon them by the parties themselves. In this instance the acts of the parties indicated the construction mutually placed upon the contracts at the time, including the acts done in their performance, and same are entitled to great if not controlling weight. The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of the intention of the parties that whatever was done by them in the performance of the contract was done under the terms of the contract as they understood them * * *."

■ The oil and gas lease is nothing more than a contract between the parties. The meaning of the rider is certainly one of the most controversial questions. Even though we have placed our interpretation upon it it still could not be said that it is so plain as not to reflect a shadow of doubt as to its meaning. The fact that the parties themselves disagree so violently as to its meaning is some reason for saying that it is not so plain as not to reflect a shadow of doubt. In Ellisor v. Kennedy, 128 S.W.2d 842, 844 (writ refused) the Court of Civil Appeals at Galveston has said:

"The ultimate purpose of the courts should be to arrive at the real intention of the parties to a contract, and to give the contract force accordingly. It is an important rule of construction that a written contract, plain and reflecting no shadow of doubt as to its meaning, shall be the sole evidence of the intention of the contracting parties. But, if the contract is not clearly unambiguous, the rule should not be permitted to defeat an intention and un-

derstanding which can be clearly proven by parol, and to lead to a conclusion which is absurd."

We consider the statement just quoted from the Court of Civil Appeals at Galveston just as authoritative as if it had been said by the Supreme Court. When the Supreme Court refuses a writ of error outright (writ refused) it gives full approval to the opinion in that case and makes the opinion as authoritative as one of its own opinions. Biggers v. Continental Bus System, Inc., Tex., 303 S.W.2d 359, at page 364.

The deposition of Mr. Arthurs denies the understanding between the parties as testified to by Mrs. Archer and Dan Archer concerning the rider to the lease. Under the authority of the cases just cited we believe this makes a material fact to be passed on by a court or jury in a trial of the case and hence the summary judgment should not have been granted. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; City of Corpus Christi v. McCarver, Tex. Civ.App., 253 S.W.2d 456; 30 Texas Law Review 295; Fonville v. Southern Materials Co., Tex.Civ.App., 239 S.W.2d 885; Hunt v. Southern Materials Co., Tex.Civ. App., 240 S.W.2d 400; Womack v. Allstate Insurance Co., Tex., 296 S.W.2d 233.

Appellants assert, "The trial court erred in granting appellees' Motion for Summary Judgment because there was a genuine issue raised in the pleadings, depositions, answer to request for admissions and exhibits as to whether either or both the gas wells on the lease in question were producing gas in paying quantities so as to keep the lease in force after the primary term of the lease."

■ We believe it is not any longer a debatable question in Texas but that the word "produced" in the "thereafter" clause of an oil and gas lease means "produced in paying quantities." In Garcia v. King, 139 Tex. 578, 164 S.W.2d 509, 511 our Supreme Court, speaking through the late

Chief Justice Alexander, quoted with approval from an opinion of the Supreme Court of Oklahoma as follows:

"Some authority may be found holding that, if a lease is to continue so long as oil or gas is produced, it is immaterial whether the lease is a paying one or not, for so long as the well drilled produces either oil or gas the lease continues. Thornton's Law of Oil & Gas, § 150, citing Gillespie v. Ohio Oil Co., 260 Ill. 169, 102 N.E. 1043. The construction there given the term 'produce' does not appeal to us, because the very purpose of the landowner in executing the lease is to have the oil and gas on the leased premises produced and marketed so that he may receive his royalty therefrom, and the purpose of the lessee is to discover and produce oil and gas in such quantities as will yield him a profit." Gypy Oil Co. v. Marsh, 121 Okl. 135, 249 P. 329, 48 A.L.R. 876.

The case just cited also is authority for the proposition that "paying quantities" when used in this connection, means paying quantities to the lessee. Many cases, including some from our own court, have held likewise. In Persky v. First State Bank of Vernon, Tex.Civ.App., 117 S.W.2d 861, this court speaking through Judge Folley quoted with approval from Hanks v. Magnolia Petroleum Co., Tex.Com.App., 24 S.W.2d 5, as follows [117 S.W.2d 863]: " 'The words "paying quantities" as applied to a gas lease mean that the gas discovered must be sufficient to pay the lessee a profit, though small, over operating and marketing expenses, although it may never repay the cost of drilling the well. * * ' " This court then went on to hold in the Persky case that the cost of drilling the well could not be considered in determining whether or not production was not in paying quantities. We believe it is significant that the court in Hanks v. Magnolia Petroleum Co., supra [24 S.W.2d 5] after saying, "the gas discovered must be suffi-

cient to pay the lessee a profit, though small, over operating and marketing expenses," then went on to say:

"What might be determined to be gas in paying quantities in one well would not be so considered in another located in a different territory. A well producing much less gas than the one drilled by plaintiff in error might be in paying quantities because of existing pipe line facilities furnishing a means of marketing the gas at a profit above the cost of operating the well. On the other hand, a well producing a large amount of gas drilled in territory remote from any market and without pipe line facilities might not be in paying quantities, unless it was shown that the amount of gas produced was sufficient to justify the construction of transportation facilities and the marketing of such gas would yield a return over and above the expense of providing the same."

The language just quoted by Judge Leddy indicates to this writer that the expense of pipe line facilities is part of the operating and marketing expense he had reference to in saying, "the gas discovered must be sufficient to pay the lessee a profit, though small, over operating and marketing expenses."

▮ If the pipe line cost in the instant case was part of the operating and marketing expense, above which appellee must make a profit, the record certainly raises a fact question as to whether either or both of the gas wells on the lease were producing in paying quantities so as to keep the lease in force after the primary term, and furnishes another reason compelling us to say that the trial court was without authority to grant the summary judgment under consideration. Summary judgment should be cautiously applied, and never so as to cut off the right of trial when there is the slightest doubt as to the facts. If the right to a summary judgment is not clear it does not exist. Bliss

v. City of Fort Worth, Tex.Civ.App., 288 S.W.2d 558.

Believing the rights in the instant case were not so clear as to justify the judgment granted it is reversed and the cause remanded.